REDMANN, Judge.
The administrator of the state Department of Employment Security appeals from a judgment declaring an employee ineligible for unemployment benefits. The principal question is whether the employee is disqualified because of leaving work without work-connected cause.
The employee is a seaman, who sails under a union contract. The contract provides that a seaman must take all accrued vacation leave from his vessel at the end of the voyage during which he accumulates 210 workdays without having taken leave. The job of a seaman who “refuses to take vacation leave . . . and makes a subsequent voyage” becomes open and the seaman loses his right to reship. A seaman who does take the mandatory leave is entitled to reship, i. e., to re-employment on the same vessel when it next returns to home port following his leave.
The seaman here would earn 70 days leave for 210 days work. He had earned 60 days leave, after 180 days work, when he elected for personal reasons to forego the continuation of the active employment to which he was entitled under the employment contract. This active employment would have continued at least 30 days and thereafter until the end of the voyage then about to begin.
At the end of that voyage the seaman would, under the contract, have to take all of his 70 or more days of “compulsory” vacation, with right to reship thereafter, or he could have made one more voyage at the end of which he would have to take his even longer vacation, without right to reship.
Apparently the seaman is likely to become unemployed, no matter what course he selects. If he accedes to compulsory vacation with 70 days leave, the end of his vacation and the return of his ship to *479 home port will not necessarily coincide, and he may therefore have to wait, unemployed, until the ship does return. If he declines the “compulsory” vacation and insists on making the extra voyage, he does not even have reship rights, and what his employment prospects may be is not shown by this record.
Thus we are faced on the one hand with apparently voluntary unemployment because of our seaman’s taking vacation before it was compulsory, and on the other hand with apparently inevitable involuntary unemployment which his early vacation may have merely accelerated.
The seaman himself has no interest in this proceeding, counsel advise, because earlier favorable rulings enabled him to receive from the Employment Security Administration Fund, R.S. 23:1511, all benefits recoverable by him, irrespective of appeals from those favorable rulings or the outcome of the appeals, R.S. 23:1635.
The real dispute is whether the employer’s experience-rating for purposes of its contribution to the Fund, R.S. 23:1536, is chargeable with the benefits received by the seaman. This dispute is to be decided, R.S. 23:1533, on the basis of the final determination of the seaman’s entitlement to those benefits.
R.S. 23:1601(1) disqualifies an individual for benefits “[i]f the administrator finds that he has left his employment without good cause connected with his employment.”
The local administrative office held the seaman’s leaving the ship under the circumstances did not disqualify him. The Appeals Tribunal referee held the leaving to be without good cause connected with the employment and therefore disqualifying. The Board of Review concluded the seaman did not “quit his job. He asked for a vacation leave and it was granted.” The Board held the seaman was not disqualified.
The trial court concluded that the seaman “did not make himself available for any other work” (besides reshipping), as ordinarily required for eligibility, R.S. 23:1600(3). The record does not contain any evidence relative to this point except that the seaman did have a reship letter. A sample form of reship letter attests to the seaman’s privilege to reship, but does not commit him to reship and thus does not evidence that he did not make himself available for other work. There is no evidence that in fact other suitable work was available from which the inference might be drawn that he did not make himself available. Throughout the administrative processes, the case was treated as raising only the question whether the seaman left employment without good, work-connected cause.
Nevertheless, R.S. 23:1600(3) conditions eligibility for benefits upon a finding by the administrator that the claimant “is available for work.” Since this is a matter of eligibility (rather than disqualification), it might be concluded that the absence of evidence to support a finding of availability prevents affirmation of a determination of eligibility. This absence of evidence, however, might be remedied by remand to the Board of Review, R.S. 23:1634.
It would be pointless to remand to determine eligibility if the seaman is in any case disqualified. We must therefore decide the difficult disqualification question.

Disqualification

Under the union contract, a seaman may not elect uninterrupted employment. He has three alternatives when his ship reaches home port.
First, if he has worked 210 days or more (but not an entire additional voyage after 210 days), he may (and unless he forfeits reship privileges “must”) take “all” accrued leave, amounting to at least 70 days. At this point we observe that after his vacation leave expires, he is entitled to reship *480 on the same vessel, but the vessel may not then be in port, and he may have to wait some time (perhaps two or three months) until it returns. During that waiting period he would be unemployed. However, there apparently exists the possibility that, depending on the numbers of jobs available on other vessels and of seamen already registered “on the board” also waiting for jobs, he might be able to obtain other employment. But the possibility of other employment does not address itself to the question now under consideration, namely whether the seaman “left his employment without good cause connected with his employment”, R.S. 23:1601(1). That question must be answered in the negative because a seaman with 210 workdays cannot be charged with having “left his employment”. He does not leave; he is forced off the ship.
The second alternative available to the seaman is to insist on an additional voyage after 210 days, in which case when the vessel next reaches home port, he is forced off the ship with more vacation leave but without reship privileges. Again, he could not be disqualified under R.S. 23:1601(1) because he would not have “left his employment.”
The third alternative, apparently available to at least some seamen who have worked less than 210 days, is to take whatever vacation has accrued. The record does not show whether every seaman electing a shorter vacation leave (a) gets reship privileges and (b) if so, is obliged to take “all” his vacation leave before reshipping. (Nor is it shown by our .record whether our seaman’s ship was in home port, available for exercise of reship privilege, at any time during his 60-day vacation when he might again have joined its crew.) In fact our seaman got reship privileges, which circumstance, without further evidence, suggests that the employer consented to his leaving the ship, prior to the time the contract would have forced him to leave the ship, on the same conditions as seamen leaving for compulsory vacation.
From the brief of the employer’s counsel it appears that the voyage our seaman missed lasted 146 days. Assuming the seaman knew the length of this voyage beforehand, its length is a circumstance of employment which, considered with other circumstances, might be “good cause connected with his employment”, R.S. 23:1601(1). If the seaman had already worked 209 days without leave and thus needed only one more day for compulsory vacation, a requirement that he work an additional 146 days (for a total of 35S days) before taking vacation might be deemed sufficient work-connected cause for leaving. On the other hand, if the seaman had only worked 70 days, the additional 146 would barely exceed the total 210 the contract envisions, and the seaman could hardly be held justified in leaving on that ground. But in either case, the seaman would have “left his employment”, perhaps as of his vacation’s end (see Southern Bell T. & T. Co. v. Administrator, Div. of E.S.1968, 252 La. 519, 211 So.2d 634), if he knew or should have known that the vessel would not be in home port and thus reship employment would not be available when his vacation ended.
Our seaman had worked 180 days, only 30 short of the 210 which would have obliged him to take vacation. The circumstances of his employment would apparently have required him to work 146 more days without vacation instead of only 30. We conclude that the Board of Review acted reasonably in concluding that the circumstances were nondisqualifying since the good cause of his leaving was connected with his work.
The matter is remanded to the Board of Review for factual evidence and determination of the apparently complex and many-sided question whether the claimant was “available for work” within the meaning of R.S. 23:1600(3).